UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 10-01595-JVS (FMOx) | | Date | June 17, 2011 |
| Title | Party Booths LLC v. Cornelius Angsuco, etc. | | | |

| | | |
|---|---|---|
| Present: The Honorable | James V. Selna | |
| | Karla J. Tunis | Sharon Seffens |
| | Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(In Chambers) Order Denying Defendant's Motion to Lift Entry of Default (fld 5-9-11)   AND**
**Granting Plaintiff's Motion for Default Judgment (Fld 5-13-11)**

Defendant Cornelius Ansguco, d/b/a Envy Party Booths ("Angsuco") moves to lift entry of default entered against him on April 13, 2011.  Plaintiff Party Booths LLC ("Party Booths") opposes Defendant's motion to lift entry of default.

Plaintiff Party Booths seeks default judgment in the form of monetary damages and permanent injunction against Defendant Angsuco.  Plaintiff Party Booths also seeks attorney fees and costs.  Defendant Angsuco does not oppose.  The motion to set aside the entry of default is DENIED.  The motion for default judgment is GRANTED IN PART and DENIED IN PART.

I.      Background

This suit arises out of Party Booths' claims of unfair competition in violation of the Lanham Act and the California Business and Professions Code.  (Docket No. 1.)  Party Booths is a full-service photo booth rental service for various special events.  (Compl. ¶4.)  Angsuco operates a photo booth rental service and advertises his services for events such as birthdays, weddings and anniversaries.  (Id. at ¶¶8-9.)  Party Booths alleges that Angsuco's use of the service mark ENVY PARTY BOOTHS and use of the service mark and domain name ENVYPARTYBOOTHS.COM constitute violations under 15 U.S.C. §1125(a) and California Business and Professions Code §17200 et seq.  (Id. at ¶¶33,39.)

On February 4, 2011, Angsuco was served in person by Party Booths.  (Def's Mot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-01595-JVS (FMOx) | Date | June 17, 2011 |

| | |
|---|---|
| Title | Party Booths LLC v. Cornelius Angsuco, etc. |

Br. 3.)  Angsuco originally had until February 25, 2011 to answer.  (Pl.'s Opp'n Br. 1.)
Angsuco, acting *pro se*, contacted Party Booths to request an extension of time to answer.
(Zuege Aff., ¶¶8,9 and 19.)  The parties agreed on a fourteen (14) day extension to file an
answer.  (Def's Mot. Br. 4.)  On March 14, 2011, after unsuccessful attempts to secure
counsel, Angsuco decided to go into settlement negotiations with the Plaintiffs.  (Def's
Mot. Br. 4.)  At one point, the parties had a tentative agreement on the terms of
settlement.  (Zuege Aff., ¶¶6, 10-14.)  Angsuco represents that during the negotiations, he
discovered that his insurance company, Allied Insurance ("Allied"), may cover the cost
of legal fees.  After filing a claim with Allied, the carrier informed Angsuco that it could
not cover the legal expenses due to the fact that the alleged infringement occurred prior to
Allied's coverage.  (Def's Mot. Br. 4.)  Angsuco was told he should file a claim with IAT
Specialty Claims, and he did so.  Angsuco represents that he shared the information about
his insurance coverage with Party Booths.  (Def's Mot. Br. 4.)  IAT Specialty Claims has
not responded to Angsuco as of May 6, 2011.  (Def's Mot. Br. 4.)

        While it appeared a formal settlement would be reached, Party Booths contends
that Angsuco cut off contact and did not respond to communication from Party Booths'
counsel between March 14, 2011 and April 4, 2011.  (Zuege Aff., ¶¶13-14.)  In an e-mail
to Party Booths dated April 4, 2011, Angsuco indicated that he was waiting for his
insurance company's response and would respond to the outstanding settlement offer by
April 7, 2011.  (Ex. G.)  Angsuco did not provide a response by April 7, 2011.  (Zuege
Aff., ¶14.)  The Clerk of the Court entered default against Angsuco on April 13, 2011.
(Docket No. 21.)

        On May 5, 2011, acting *pro se*, Angsuco attempted to file a Motion to Dismiss, but
was informed by the Court that a motion to set aside default would be required first.
(Def's Mot. Br. 4.)  Angsuco filed a Motion to Lift Entry of Default on May 9, 2011.
(Docket No. 25.)  Party Booths filed an Opposition to Angsuco's Motion to Lift Entry of
Default.  (Docket No. 25.)  Party Booths filed a motion for default judgment on May 13,
2011.  (Docket No. 29.)

II.    <u>Legal Standard</u>

        A.    <u>Motion to Lift Entry of Default</u>

        Federal Rule of Civil Procedure 55(c) provides that a court may set aside entry of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                Date   June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

default for "good cause" in accordance with Rule 60(b).  Fed. R. Civ. P. 55(c); see also
TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001) (holding that
the three factors derived from the "good cause" standard that governs the lifting of entries
of default under Fed.R.Civ.P. 55(c) govern the vacating of a default judgment under Rule
60(b)).

Rule 55(c) provides that the Court may set aside an entry of default for "good
cause."  In the Ninth Circuit, there are "three factors derived from the 'good cause'
standard that govern the lifting of entries of default under Fed. R. Civ. P. 55(c)."  TCI
Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).  These factors are:
(1) whether the defaulting party engaged in culpable conduct that led to the default; (2)
whether the defaulting party has a meritorious defense; and (3) whether the opposing
party would be prejudiced if the default is set aside.  See Franchise Holding II, LLC. v.
Huntington Rests. Group, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004).  These factors are
disjunctive, and the Court is free to deny the motion on any of these three bases.  Id.
(citing Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir.
2000)).

Rules for determining when a default should be set aside are solicitous towards
movants, especially those whose actions leading to the default were taken without the
benefit of legal representation.  TCI Group Life Ins. Plan v. Knoebber, 244 F.3d at 695-
98.  The moving party has the burden of showing that the factors favor setting aside the
default. Franchise Holding II, LLC., 375 F.3d at 926; see also TCI Group Life Ins. Plan,
244 F.3d at 697.

B.      Motion for Default Judgment

Under Federal Rule of Civil Procedure 55(a), the entry of a default judgment is
appropriate when a party fails to plead or otherwise defend as required by the Federal
Rules of Civil Procedure.  Fed. R. Civ. P. 55(a).  Granting a motion for default judgment
is within the discretion of the Court.  Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir.
1986); Yew v. Dulles, 236 F.2d 415, 416 (9th Cir. 1956).  The Court, however, will
consider the following factors:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's
substantive claim; (3) the sufficiency of the complaint; (4) the sum of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                    Date   June 17, 2011

Title       Party Booths LLC v. Cornelius Angsuco, etc.

money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

On an application for a default judgment, the factual allegations in the complaint are taken as true, with the exception of those related to damages.  See Pope v. United States, 323 U.S. 1, 12 (1944); Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).  Here, Party Booths seeks relief in the form monetary damages and a permanent injunction. The standard for determining whether a permanent injunction should be granted is "essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987).

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., --- U.S. ----, 129 S. Ct. 365, 374 (2008); see also Alliance for Wild Rockies v. Cottrell, --- F.3d ----, 2010 WL 2926463 (9th Cir. July 28, 2010).

Injunctive relief is available to prevent future trademark infringement under the Lanham Act. See 15 U.S.C. §§ 1116(c), 1125(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988).

III.     Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                   Date    June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

A.      <u>Motion</u> <u>to</u> <u>Lift</u> <u>Entry</u> <u>of</u> <u>Default</u>

As outlined above, the moving party must satisfy all three of the factors
in order for default to be set aside. The Court concludes that Angsuco has
satisfied his burden on all of the factors except one.

1.      <u>Culpable</u> <u>Conduct</u>

In <u>TCI</u> <u>Group</u> <u>Life</u> <u>Ins.</u> <u>Plan</u>, the Ninth Circuit held that "if a defendant's
conduct was not 'culpable,' then her failure to respond to a lawsuit is ordinarily
'excusable,' and in the interests of substantial justice the better course may well
be to vacate the default judgment and decide the case on the merits."  244 F.3d
at 696-97 (9th Cir. 2001).  In that case, the Ninth Circuit considered whether the
district court had erred in denying a motion to vacate a default judgment entered
in favor of two people making claims on a life insurance policy in an
interpleader action.  There, a widow and her mother-in-law had conflicting
claims to a policy from the widow's deceased husband.  <u>Id.</u> at 694. Only the
mother-in-law filed an answer, counterclaim, and cross-claim to the interpleader
summons.  <u>Id.</u>  The widow, distraught from her husband's death, moved across
the country with her children and neglected to respond to the cross-claim.  Two
days after the answer was due, the mother-in-law moved for an entry of default,
and later won a default judgment.  The widow did not respond to any of these
motions and later sought to vacate the default judgment.  The widow's
"knowing failure to answer was for understandable reasons, and in no way
designed to obtain strategic advantage in the litigation."  <u>Id.</u> at 698.

The court explained that a defendant's conduct is not necessarily culpable
or inexcusable for Rule 60(b) purposes where the defendant offers a "credible,
good faith explanation negating any intention to take advantage of the opposing
party, interfere with judicial decision making, or otherwise manipulate the legal
process."  <u>Id.</u>  The court considered whether a party's "intentional" failure to
file an answer was "willful, deliberate, or evidence of bad faith."  <u>Id.</u>  So long as
the attorney or litigant offers an explanation for the delay that is not the result of
"deviousness or willfulness," that person has acted in good faith.  <u>Id.</u> at 698; <u>see</u>
<u>also</u> <u>Falk</u> <u>v.</u> <u>Allen</u>, 739 F.2d 461 (9th Cir. 1984) (finding that the litigant's
failure to appear at hearing because she was leaving the country for medical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                    Date   June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

treatment the next day was not culpable).  These decisions are consistent with
the Supreme Court's examination of "excusable neglect" and consideration of
Rule 60(b) in <u>Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd.
Partnership</u>, 507 U.S. 380, 394 (1993) ("'neglect' . . . carries the idea of
negligence and not merely non-action.")

        Angsuco's failure to reply to Party Booths' complaint does not constitute
culpable or inexcusable conduct, but rather has a good faith explanation.  Party
Booths claims that Angsuco engaged in culpable conduct by failing to request
an extension of time, unilaterally breaking off settlement negotiations and
failing to respond to attempts to communicate.  After being personally served
on February 4, 2011, Angsuco contacted Party Booths' counsel to request an
extension of time to answer.  With the success of his photo booth rental
company at stake, Angsuco searched for counsel to represent him, but it was to
no avail.  Angsuco contacted Party Booths on March 14, 2011, to begin
settlement negotiations and at one point the parties were close to reaching a
final settlement.

        Party Booth contends that by cutting off communication with their
counsel, Angsuco's conduct during the settlement negotiations was willful and
deliberate.  It was during the settlement negotiations that Angsuco discovered
that his insurance company could possibly cover the cost of his legal fees.  Nine
(9) days before default was entered against Angsuco, Angsuco e-mailed Party
Booths' counsel explaining that he was waiting to hear back from his insurance
company and would follow up on his decision within several days.  Angsuco
has offered a sufficient explanation for the delay in answering which was not
the result of deviousness or willfulness.  Thus, Angsuco has made good faith
efforts by requesting a time extension to answer the complaint and by initiating
settlement negotiations with Party Booths.

                2.      <u>Meritorious Defenses</u>

        To satisfy the "meritorious defense requirement," Angsuco must allege
sufficient facts that, if true, would constitute a defense.  The question whether
the factual allegations are true is not to be determined by the court when it
decides the motion to set aside the default.  Rather, that question would be the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)          Date   June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

subject of later litigation.  United States v. Mesle, 615 F.3d 1085, 1094 (9th Cir. 2010).  However, if the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment.  TCI Group Life Ins. Plan, 244 F.3d at 697.

       Party Booths' claims against Angsuco include unfair competition under §43(a) of the Lanham Act, unfair competition under §17200 of the California Business and Professions Code, California common law trademark infringement and California common law unfair competition.  (Compl. ¶¶10-48.)  Angusco's sole argument for a meritorious defense is that Party Booths cannot state a claim for trademark infringement because the Unites States Patent & Trademark Office has refused at least two of Party Booths' trademark applications and registrations.  (Def's Mot. Br. 7.)  Even if Angsuco's defense to the trademark infringement claim has merit,  Angsuco has not offered any meritorious defense to Party Booths' unfair competition claims under the Lanham Act, the California Business and Profession Code §17200 and California common law.  Thus, because Angsuco has not met his meritorious defense requirement, his motion to lift entry of default cannot be granted.

            3.      Prejudice to Plaintiff

       Prejudice exists if lifting the entry of default would hinder the plaintiff's ability to pursue its claim.  Falk, 739 F.2d at 463.  A delay is prejudicial where it results in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion."  TCI Group Life Ins. Plan, 244 F.3d at 701.  "The fact that [a Plaintiff] chose to oppose vacating the default and was unsuccessful in doing so cannot establish prejudice."  Id.

       Party Booths argues that it would be prejudiced by the Court setting aside the entry of default against Angsuco because Party Booths continues to suffer from acts of infringement and unfair competition.  (Zuege Aff., ¶21.)  "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment."  TCI Group Life Ins. Plan, 244 F.3d at 701.  The Court finds that Party Booths would not be prejudiced by setting aside entry of default.  Party Booths has not alleged that they have suffered harm such as loss of evidence, difficulties of discovery or opportunity for fraud.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                    Date   June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

Party Booths has stated that Angsuco's decision not to retain counsel has placed a great burden on them.  (Pl.'s Opp'n Br. 9.)  However, a defendant's decision to act *pro se* does not constitute prejudice.  Nor does "simply delaying resolution of the case" constitute prejudice.  TCI Group Life Ins. Plan, 244 F.3d at 701.  Thus, Party Booths would not suffer prejudice merely because it would have to litigate on the merits if the motion to lift entry of default were granted.

Nonetheless, because Angsuco failed to meet his meritorious defense requirement, the Court denies his motion to lift entry of default.


B.      Motion for Default Judgment

Angsuco has not opposed the motion for default judgment, which he was served by first class mail on May 13, 2011.  In light of the information contained in Party Booths' motion, the Court finds that default judgment, in the form of a permanent injunction and monetary damages is appropriate, while the request for attorneys' fees and costs is unsubstantiated and thus inappropriate.

The Court begins by noting that Party Booths has established the necessary elements for entry of default judgment: (1) the Clerk of the Court entered a default against Angsuco (Docket No. 21); (2) Angsuco failed to file an answer to Party Booths' complaint, which was properly served upon him (Docket No. 13); (3) Angsuco is neither an infant nor incompetent and is not in military service  (Zuege Aff., ¶¶2 and 3; Ex. A.); and (4) notice of this application has been served upon Angsuco.  (Pl.'s Mot. Br. 6.)  The Court also finds that the Eitel factors, save the preference for a decision on the merits, favor the entry of default judgment.

1.      Liability

Party Booths' first claim is for unfair competition in violation of § 43(a) of the Lanham Act.  A defendant is liable for false designation of origin where a plaintiff holds a protectable mark and the defendant made commercial use of a mark that is similar enough to cause confusion in the minds of consumers about the origin or services in question.  KP Permanent Make-Up,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                    Date   June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

Inc. v. Lasting Impression I, Inc. 543 U.S. 111, 117 (2004).

      Here, Party Booths has used the service mark PARTY BOOTHS in
association with providing photo booth rental services and with marketing in
interstate commerce since February 2006.  (Compl. ¶12., Docket No. 1.)  Party
Booths is the owner of the standard character mark and graphical mark PARTY
BOOTHS for photo booth rental services.  (Compl. ¶19,21.)  Party Booths'
marks are registered with the U.S. Patent & Trademark Office.  (Bakewell Decl.
¶5.)  The complaint shows how Angsuco has used a confusingly similar mark,
ENVY PARTY BOOTHS, to falsely describe Party Booths as the source of
Angsuco's photo booth rental service and falsely represent that Angsuco's
services are provided by, marketed by, sponsored by, approved of, or licensed
by Party Booths.  (Compl. ¶33.)  Therefore, Party Booths has shown that
Angsuco has infringed on its PARTY BOOTHS marks.

      The Court now determines whether the likelihood of consumer
confusion, is satisfied here.  The Ninth Circuit has adopted an eight-part test to
determine whether there is a likelihood of consumer confusion as between two
or more products.   Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir.
2007).  The following factors are relevant to determining whether there is a
likelihood of confusion:

      (1) [S]trength of the mark; (2) proximity of the goods; (3) similarity of
      the marks; (4) evidence of actual confusion; (5) marketing channels used;
      (6) type of goods and the degree of care likely to be exercised by the
      purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood
      of expansion of the product lines.

Id. at 903, n.5.  A likelihood of confusion may be established without satisfying
all of the factors.  Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127,
1129 (9th Cir. 1998).

      Party Booth's mark is strong and Angsuco's use of the name "Envy Party
Booths" and the URL "envypartybooths.com" are likely to cause customer
confusion.  (Bakewell Decl. ¶16.)  Party Booths alleges actual customer
confusion between PARTY BOOTHS® and Angsuco's ENVY PARTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 10-01595-JVS (FMOx)                    Date    June 17, 2011

Title    Party Booths LLC v. Cornelius Angsuco, etc.

BOOTHS.  (Id. at ¶18.)  On May 2, 2011, Party Booths received an e-mail
inquiry from Angsuco's customer who contacted Party Booths out of confusion
between Angsuco's Envy Party Booths and Party Booths.  (Id.)  Party Booths
alleges that this incident was not an isolated one.  (Id.)  Party Booths alleges
that "Defendant is intentionally trading on the goodwill of Party Booths, and is
likely to cause and actually causing customer confusion regarding the origins of
services of Party Booths."  (Id. at ¶16.)  Accordingly, Party Booths has satisfied
the fourth element of customer confusion.

      The Lanham Act provides two distinct grounds on which to base a cause
of action alleging unfair competition.  15 U.S.C. §1125(a)(1)(A) protects
against false association and 15 U.S.C. §1125(a)(1)(B) protects against false
advertisement.  Kournikova v. General Media Communs., Inc., 278 F. Supp 2d
1111, 1116-17 (C.D. Cal. 2003).  Party Booths has invoked the grounds of false
association under its claim for false designation of origin.  To bring a false
association claim,  §1125(a)(1)(A) requires the holder of a valid trademark to
show that a defendant's illicit use of its mark in commerce has caused
consumers to become confused, mistaken, misled and/or deceived as to the
producer of the goods offered for sale.  Waits v. Frito–Lay, Inc., 978 F.2d 1093,
1109–10 (9th Cir.1992).  Party Booths has already shown that Angsuco's use of
the PARTY BOOTHS mark has caused customer confusion, as discussed
above.

      Party Booths' asserts a claim against Angsuco for unfair competition
under §17200 of the California Business and Professions Code.  California's
Unfair Business Practices Act defines unfair competition to include unlawful,
unfair, or fraudulent business acts or practices.  Cal. Bus. & Prof. Code §
17200.  A business act is unlawful if the act violates any other law.  Farmers
Ins. Exch. v. Supreme Court, 2 Cal. 4th 377, 383 (1992).  This includes a
violation of federal statutes and regulations, state law and regulations,
professional standards and ethical codes, as well as local ordinances.  Party
Booths has already shown that Angsuco has violated      § 43(a) of the Lanham
Act through false designation of origin.  Thus, because Angsuco violated §
43(a) of the Lanham Act, his business act is unlawful and is therefore liable
under California Business and Professions Code §17200.  The Court is
therefore satisfied that Party Booths has established Angsuco's liability under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-01595-JVS (FMOx) | Date | June 17, 2011 |

| | |
|---|---|
| Title | Party Booths LLC v. Cornelius Angsuco, etc. |

false designation of origin and unfair competition causes of action.

    2.    <u>Permanent</u> <u>Injunction</u>

    Party Booths seeks to enjoin Angsuco from directly or indirectly infringing Party Booths' service marks in any manner and engaging in any other acts or conduct that would cause consumers to believe that Angsuco's services are somehow sponsored by, authorized by, or in any other way associated with Party Booths.  (<u>See</u> <u>generally</u> Compl.)  Party Booths has shown success on the merits, as the Court finds that Angsuco has indeed infringed on Party Booths marks.  Party Booth alleges that it has suffered irreparable harm as a result of unfair competition.  (Compl. ¶48.)  Injunctive relief here is also in the public interest because it will bar unfair competition.  Party Booths meets all the requirements for injunctive relief.  <u>Winter</u> <u>v.</u> <u>Natural</u> <u>Res.</u> <u>Def.</u> <u>Council,</u> <u>Inc.</u>, 129 S. Ct. at 374.

    Thus, due to Angsuco's continued use of the Envy Party Booths mark which is likely to cause confusion with Party Booths' marks and conduct likely to cause and actually causing customers to erroneously believe that Angsuco's services are provided by, marketed by, sponsored by, approved of or licensed by Party Booths, Angsuco is permanently enjoined from participating in the actions described in Party Booths' prayer for relief.  This includes:

    (i) Using Plaintiff's service mark, or any other mark, name, trade dress, or trade practice that is likely to cause confusion with Plaintiff's service mark, in connection with the advertising, promotion, sale or distribution of its business, goods, and services;

    (ii) Doing any other act or thing likely to induce the mistaken belief that Defendant's goods or services are in any way affiliated, connected, or associated with Plaintiff or its product or services;

    (iii) Doing any other act or thing likely to cause confusion or induce the mistaken belief that Defendant's goods, services, or commercial activities are in any way originated from, sponsored, or approved by Plaintiff or its products and services; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                    Date    June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

(iv) unfairly competing with Plaintiff in any manner whatsoever.

      3.      <u>Monetary</u> <u>Damages</u>

Party Booths requests damages equal to Angsuco's profits, which they have estimated to be $24,500. (Pl.'s Mot. Br. 3.) Party Booths has determined this amount by multiplying the number of events Angusco has advertised he has held on his website (70) by an estimate of the average profit Angsuco makes per event ($350). (Bakewell Decl. ¶¶24-26.) Party Booths calculated this amount using Donald Bakewell's professional experience and the rates and data found on Angsuco's website.

Mr. Bakewell, one of the owners of Party Booths, is familiar with the photo booth rental industry, including typical rates, costs, and other relevant business factors. (<u>Id.</u> at ¶9.) Party Booths determined Angsuco's average profits by subtracting the rate of the most popular photo booth rental package on his site ($1,000 for four (4) hours) minus costs incurred by Angsuco, which comes out to $350 per event. (<u>Id.</u> at ¶¶20-25.) The Court finds that the method of computation for damages is based on sufficient and adequate grounds. Therefore, the Court awards the $24,500 in damages requested by Party Booths.

      4.      <u>Attorney</u> <u>Fees</u> <u>and</u> <u>Costs</u>

Pursuant to 15 U.S.C. §1117(a), Party Booths requests reasonable attorneys' fees. (Pl.'s Mot. Br. 4.) "The court in exceptional cases may award reasonable attorneys fees to the prevailing party." 15 U.S.C. §1117(a). "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." <u>Rio</u> <u>Props.</u> <u>v.</u> <u>Rio</u> <u>Int'l</u> <u>Interlink</u>, 284 F.3d 1007, 1023 (9th Cir. 2002). In infringing on the PARTY BOOTHS® marks for his company name and website, Angsuco acted willfully in order to generate business for his photo booth rental service. Because Angsuco acted deliberately and willfully in trading upon the goodwill of Party Booths, this is an exceptional case of trademark infringement which supports a finding for attorneys' fees. (Pl.'s Mot. Br. 4.; Bakewell Decl. ¶16.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                    Date   June 17, 2011

Title        Party Booths LLC v. Cornelius Angsuco, etc.

The Court uses the "lodestar" approach in determining reasonable
attorneys' fees for Party Booths.  To calculate the "lodestar" amount, this Court
must multiply the number of hours the attorneys reasonably spent on the
litigation by the reasonable hourly rate.  McElwaine v. U.S. West, Inc., 176
F.3d 1167, 1173 (9th Cir. 1999).   The court may raise or lower the lodestar
according to the factors identified by the circuit:

> (1) the time and labor required; (2) the novelty and difficulty of
> the questions involved; (3) the skill requisite to perform the legal
> service properly; (4) the preclusion of other employment by the
> attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations
> imposed by the client or the circumstances; (8) the amount involved
> and the results obtained; (9) the experience, reputation, and ability
> of the attorneys; (10) the "undesirability" of the case; (11) the nature
> and length of the professional relationship with the client; and
> (12) awards in similar cases.

Fischel v. Equitable Life Assurance Society of the United States, 307 F.3d 997,
1007 n. 7 (9th Cir. 2001).  The Court is cautious not to adjust the lodestar figure
based on any of the foregoing factors that necessarily are subsumed into the
original lodestar calculation.  Morales v. City of San Rafael, 96 F.3d 359, 364
& n. 9 (9th Cir. 1996) (identifying the factors presumably subsumed in the
lodestar calculation).  Party Booths has failed to provide the Court with
information regarding attorneys' fees sought, the hours billed, whether the
hourly rate for the attorneys are reasonable, or any other records which could
provide a basis for the Court to award reasonable attorneys' fees.  Thus, there is
presently an incomplete showing that Party Booths is entitled to an award of
attorneys' fees and the Court declines the request without prejudice.

IV.    Conclusion

For the foregoing reasons, the Court DENIES Angsuco's motion to lift
entry of default entered on April 13, 2011.

The Court GRANTS Party Booths' motion for default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01595-JVS (FMOx)                    Date   June 17, 2011

Title      Party Booths LLC v. Cornelius Angsuco, etc.

1) Orders permanent injunction.

2) Awards monetary damages in the amount of $24,500.

3) Declines to award attorney fees.

IT IS SO ORDERED.

0   :   00

Initials of Preparer        kjt